MELVILLE J. FORD v. THE TOWNSHIP OF WASHINGTON, IN THE COUNTY OF BERGEN.

Submitted March 17, 1904—Decided June 13, 1904.

1. The power granted by the revised Township act (*Pamph L.* 1899, *p.* 372, § 81) to township committees to borrow money in anticipation of sums voted or granted, and the power granted by the same section to secure the payment thereof by notes of the township, are distinct powers.
2. A debt incurred by the township for money loaned is still enforceable, although secured by note which, with renewals, runs for a longer period than one year.
3. Money loaned to a township committee is recoverable by suit, although used by the committee to pay off and discharge a note held by a third person, which is a renewal of a note originally given more than one year before.

On demurrer to plea.

Before GUMMERE, CHIEF JUSTICE, and Justices DIXON, GARRISON and SWAYZE.

For the plaintiff, *William B. Gourley.*

For the defendant, *Reuben M. Hart.*

The opinion of the court was delivered by

SWAYZE, J. The declaration contains only the common counts in assumpsit. A copy of a note was annexed to the declaration, but it was agreed between counsel that the declaration should be treated as for money had and received. The plea, to which a demurrer had been interposed, avers that the note is a renewal of a note dated May 23d, 1903, payable four months after date to the order of the township treasurer, and by him endorsed to the plaintiff; that the plaintiff had loaned the township the amount of the note to pay off a note dated January 23d, 1903, held by the Hackensack National Bank; that the note held by the bank was in

renewal of a note originally made March 23d, 1902; and that the renewal of these notes for a period exceeding one year was in violation of section 81 of the act concerning townships, "and that by reason thereof the plaintiff is not entitled to recover thereon, although all of said several notes referred to were duly signed, discounted and delivered under and by authority of said township committee of the township of Washington, and in accordance with proper resolutions passed by it at its several meetings, and the moneys arising therefrom have been used and applied to and for township purposes."

This court held, thirty years ago, in *Hackettstown* ads. *Swackhamer,* 8 *Vroom* 191, that a municipal corporation, in the absence of a specific grant of power, does not, in general, possess the capacity to borrow money. Since that time the power to borrow has been granted to townships and now rests upon the revised Township act. *Pamph. L.* 1899, *p.* 372. Section 81 provides that the township committee may borrow money from time to time in anticipation of the collection of any sum or sums voted or granted for township purposes not exceeding the amount voted, and may secure the payment thereof, with interest, by notes of the township, which shall not, with all renewals thereof, run for a longer period than one year. The power granted by this section is twofold. It is—*first,* a power to borrow money, and *second,* a power to secure the payment of the money borrowed by notes. These two powers are quite distinct. There is nothing to prevent a township from borrowing money without giving any written evidence of the debt, or upon a mere receipt or certificate. The essential power is the power to borrow. With this power now granted, a township has, as Chief Justice Beasley intimated, in *Hackettstown* ads. *Swackhamer,* 8 *Vroom* 191 (at *p.* 198), the general and inherent right to execute a note as a voucher of indebtedness, and it is not necessary that the voucher should have the effect, when in the hands of a *bona fide* holder before maturity, of cutting off the equities between the maker and the payee. That question does not arise in the present case.

In *Morgan* v. *Guttenberg,* 11 *Vroom* 394, the same learned judge, speaking of improvement certificates, said: "This municipality is expressly authorized to make these improvements, and such an authority necessarily carries with it the right to contract and incur debts in the doing of such work. Debts of this character would, in the absence of any special agreement, be immediately due on the completion of the labor, and it is presumed that no one will deny that the authorities of the town could legitimately give a voucher or certificate showing such indebtedness to exist. If this can be done, what is to prevent such debtor and creditor agreeing that such debt, instead of becoming immediately payable, shall ·become so on the happening of some subsequent event or at some fixed time in the future?"

This court, in *Slingerland* v. *Newark,* 25 *Vroom* 62 (at *p.* 68), said: "The implied right of municipal corporations to give sealed evidences of indebtedness for debts legally incurred is unquestionable. It is only where these evidences of debt are to be rendered commercially negotiable that express authority to that end must be granted."

These citations are enough to show that the power to secure the loan by note granted by the statute is not a necessary accompaniment of the power to borrow. It operates to authorize the issue of commercial paper, subject to the statutory limitation as to time. But the township is under no obligation to issue commercial paper, and if it fails to comply with the statute in this respect the paper, while not effective as a negotiable note, is none the less effective as a certificate of indebtedness. It would be manifestly unjust to hold that a municipality could get rid of a debt lawfully contracted by issuing an unauthorized obligation for its payment.

It cannot be successfully urged that the indebtedness that may be incurred is limited to one year. That limitation applies, by the terms of the statute, only to notes to secure the debt, and was evidently intended to prevent the disastrous consequence to municipalities of permitting the issue of commercial paper for an indefinite time, which would be enforceable in the hands of *bona fide* holders, however valid a

defence might exist as between the township and the original holder. The power to borrow money is limited by the amount voted or granted for township purposes, and the fact that this power can only be exercised in anticipation of the amount voted or granted suggests the inference that the loan must be repaid out of the moneys the collection of which has been anticipated. Ordinarily these moneys would be collected within the year at the time the taxes are received, but not necessarily, for the township committee is authorized to construct sidewalks and incur indebtedness for that purpose, and is to be reimbursed for the cost by assessments upon the abutting property, which may be payable in ten annual installments (*Pamph. L.* 1899, *p.* 390, § 42); and the assessments, when collected, are to be first applied to the extinguishment of indebtedness incurred for the improvement as it matures; can it be doubted that the township committee may borrow money to meet this indebtedness, and that this indebtedness may run as long as the assessments are unpaid?

Even if the right to incur indebtedness were limited to one year, and the debt must be paid out of the revenues of the year, how can the failure of the township officers to pay discharge the debt? No language of the statute indicates such an intention. On the contrary, the statute contemplates that there may be judgments against the township which are not met by the annual appropriations at the township election, and the township committee is authorized to order the amount necessary to pay the judgment to be raised.

The case has thus far been treated as if the original lender had renewed the note from time to time, and as if the money now sued for had been loaned to the township for more than a year. The plea, however, does not aver such to be the fact. Its averments are that the plaintiff had loaned this money to pay off a note dated January 23d, 1903, discounted and held by the Hackensack National Bank. The plea does not aver that the plaintiff had any knowledge that the note which was paid with his money was a renewal of a note which had its inception in March, 1902. When the township committee, in May, 1903, borrowed of the plaintiff, they were authorized

by statute to borrow in anticipation of the amount voted at the township election the previous March. We fail to see how such a loan can be invalidated by the fact that the township committee applied the money to the payment of an old debt, which had run for more than one year. The plaintiff cannot be deprived of his just claim, even if the money was misapplied by the township committee.

There must be judgment for the plaintiff on this demurrer.